**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE:

| | |
|---|---|
| **HYPERION FOUNDATION, INC.,** **D/B/A OXFORD HEALTH & REHABILITATION CENTER,** | **CASE NO. 08-51288-NPO** |
| **DEBTOR.** | **CHAPTER 11** |
| **HYPERION FOUNDATION, INC.,** **D/B/A OXFORD HEALTH & REHABILITATION CENTER** | **PLAINTIFF** |
| VS. | **ADV. PROC. NO. 09-05043-NPO** |
| **ACADEMY HEALTH CENTER, INC.,** **F/K/A ADVENTIST HEALTH CENTER** | **DEFENDANT/** **THIRD-PARTY PLAINTIFF** |
| VS. | |
| **HP/MANAGEMENT GROUP, INC.,** **AND DOUGLAS K. MITTLEIDER** | **THIRD-PARTY DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO COMPEL SETTLEMENT**

On October 6, 2009, there came on for hearing (the "Hearing") the Motion to Compel Settlement (the "Motion") (Adv. Dkt. No. 65) filed by the Debtor, Hyperion Foundation, Inc., d/b/a Oxford Health & Rehabilitation Center (the "Debtor"); the Response to Motion to Compel Settlement (the "Response") (Adv. Dkt. No. 70) filed by Academy Healthcare Center, Inc., f/k/a Adventist Health Center, Inc. ("AHC"); and the Joinder in Motion to Compel Settlement Filed by Debtor (the "Joinder") (Adv. Dkt. No. 72) filed by HP/Management Group, Inc. and Douglas K. Mittleider ("Third-Party Defendants") in the above-styled adversary proceeding (the "Adversary"). At the Hearing, Craig M. Geno and Melanie Vardaman ("Vardaman") represented the Debtor; Derek

A. Henderson ("Henderson") represented AHC; and J. Walter Newman, IV ("Newman") represented the Third-Party Defendants. The Court, being fully advised in the premises, finds that the Motion should be granted as set forth herein for the reasons specified.

## Jurisdiction

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Notice of the Hearing was proper under the circumstances.

## Facts

The acrimonious relationship between the Debtor and AHC extended long before the filing of the Debtor's chapter 11 petition. This Adversary is just another manifestation of their ongoing landlord-tenant dispute.[1] In short, AHC claims that the Debtor owes it approximately $560,890.55 (Claim # 18-1) for past due rent, whereas the Debtor claims it is entitled to offset that amount (and more) for the cost of necessary repairs to the leased facilities. (Adv. Dkt. No. 1).

Finally seeing the wisdom of resolving the litigation through settlement, the parties began negotiating and exchanging various settlement proposals in July, 2009. (AHC Exs. 1, 2).[2] On the afternoon of Friday, September 25, 2009, AHC extended a written settlement proposal (the "Settlement Proposal") that the Debtor and the Third-Party Defendants contend became a binding settlement agreement later that same evening after telephone conversations among counsel for the parties. (Debtor Ex. 1 & AHC Ex. 3).

---

[1] The irony that the Debtor's articles of incorporation describes it as a corporation organized "for religious and charitable uses," and that AHC is owned by a church is not lost on this Court.

[2] All exhibits refer to exhibits introduced into evidence at the Hearing.

The substance of AHC's Settlement Proposal was that the Debtor would: (a) "pay AHC $325,000 for complete and full satisfaction of all claims"; (b) release to AHC $72,000 held by the Debtor for September and October, 2008 rent; and (c) reimburse AHC $5,200 for property taxes paid by AHC. (Debtor Ex. 1 & AHC Ex. 3). Any delinquent payment by the Debtor, whether in rent or settlement, would result in automatic termination of the parties' lease agreement. (Debtor Ex. 1 & AHC Ex. 3). As to all of these terms, there is no dispute that AHC, the Debtor, and the Third-Party Defendants reached an amicable agreement.

AHC, however, claims that the Debtor proposed changes to the Settlement Proposal as to the timing of certain events and these changes amounted to a counteroffer that AHC rejected on Wednesday evening, September 30, 2009. The dispute revolves around the terms contained in the Settlement Proposal that appear in italics below:

1.) "$100,000 [of the first installment of $325,000] shall be paid *within five (5) business days* of a final order approving the settlement."

2.) "$125,000 [of the third installment of $325,000] shall be paid by equal monthly payments over a period of eighteen (18) months ($6,944.44). The first monthly payment will be due *in January 2010.*"

3.) "All claims between the parties will be dismissed with prejudice. The claims will not be dismissed <u>until</u> *the first $200,000 is paid*. All the litigation goes away."

(Debtor Ex. 1 & AHC Ex. 3).

The settlement negotiations were conducted by Henderson on behalf of AHC and by Vardaman on behalf of the Debtor,[3] and they were the only witnesses who testified at the Hearing. Essentially, their testimony about the numerous telephone conversations they had on Friday evening,

---

[3] Apparently, the position of the Third-Party Defendants was being expressed by Vardaman on behalf of Newman. As previously stated, Newman filed the Joinder to the Motion on behalf of the Third-Party Defendants.

September 25, 2009, was consistent. Vardaman testified that during their last conversation, she accepted the Settlement Proposal on behalf of the Debtor and thought the parties had reached a binding settlement agreement. As a result, Henderson cancelled the deposition of Third-Party Defendant, Douglas Mittleider, that he had scheduled for Monday, September 28, 2009. In addition, Henderson agreed that Vardaman could "hold up" on preparing a response to the Motion for Summary Judgment filed by AHC (the "Motion for Summary Judgment") (Adv. Dkt. No. 39).

In anticipation of "putting pen to paper," or, in other words, drafting the necessary settlement documents, Vardaman asked Henderson whether it was acceptable to AHC to make the first installment payment due on November 16, 2009, which she estimated to be close to the time period contemplated in the Settlement Proposal. She also asked whether the monthly settlement payments could be made due on the last day of each month, given that the Settlement Proposal did not specify a day of the month. Finally, she asked whether AHC would consider dismissing the Third-Party Defendants without prejudice upon court approval of the settlement (given that the Third-Party Defendants were not obligated to pay any settlement funds) and then dismissing all parties with prejudice upon payment of the $200,000. Vardaman did not consider her requests to constitute a rejection of the Settlement Proposal and a counteroffer. Her testimony in this regard was supported by a copy of the Settlement Proposal that contained her hand-written notes of her conversations with Henderson. (Debtor Ex. 1 & AHC Ex. 3). Henderson testified that he informed Vardaman that he had no authority from AHC to add or change any terms, no matter how trivial, that were not already specifically included in the Settlement Proposal. Vardaman understood Henderson's cautionary statement to mean only that AHC might reject her suggested changes. She firmly believed that the parties had reached a binding, settlement agreement at that time. According to Henderson, AHC

rejected the changes and the settlement itself because it was tired of the negotiations process. The Debtor and the Third-Party Defendants now request judicial enforcement of the settlement agreement, the terms of which they contend are sufficiently set forth in the Settlement Proposal.

### Discussion

"Settlement agreements have always been a favored means of resolving disputes" in the Fifth Circuit.[4] Thomas v. State, 534 F.2d 613, 615 (5th Cir. 1976). It also is clear that "settlement agreements, when fairly arrived at and properly entered into, are generally viewed as binding, final, and as conclusive of the rights of the parties as is a judgment entered by the court." Rodriguez v. Via Metro. Transit Sys., 802 F.2d 126, 128 (5th Cir. 1986) (citing Thomas v. Louisiana, 534 F.2d 613 (5th Cir. 1976) and Cia Anon Venezolana de Navegacion v. Harris, 374 F.2d 33 (5th Cir. 1967)). Settlement agreements may not be repudiated "[a]bsent fraud, deception, coercion or overreaching . . . ." Rodriguez, 802 F.2d at 129 (citing Strange v. Gulf & S. Am. Steamship Co., Inc., 495 F.2d 1235 (5th Cir. 1974)).

In light of these principles, the bankruptcy court has the inherent power not only to recognize and encourage settlements, but also to enforce such agreements when reached by the parties. Bell v. Schexnayder, 36 F.3d 447, 449 (5th Cir. 1994). Such power to recognize and enforce settlements supports what the Fifth Circuit has described as "three important goals encouraged by our judicial system: voluntary settlements of disputes, the enforcement of agreements according to the objective intent of the parties, and an end to litigation." Id. at 450.

---

[4] For a discussion of the requisites of enforcing a settlement agreement in a bankruptcy case, see Neil P. Olack & Kristina M. Johnson, Compelling Settlement Agreements in Bankruptcy Cases: Holding Their Feet to the Fire, 18 Miss. C. L. Rev. 427 (1998). At the Hearing, counsel for the parties agreed that this article reflects the current state of the law on this issue.

When faced with the issue of enforcing a compromise, a federal court must determine whether an agreement was reached under applicable state law, unless there is a federal jurisdiction issue involved in the creation of the agreement. Resolution Trust Corp. v. Accardo, No. 93-0976, 1995 WL 479729 (E.D. La. Aug. 11, 1995). The same holds true in the bankruptcy court's enforcement of settlements. See, e.g., Equity Mgmt. II Corp. v. Carroll Canyon Assoc. (In re Carroll Canyon Assoc.), 73 B.R. 236, 238 (S.D. Miss. 1987).

In Houston OTR v. Holder (In re Omni Video, Inc.), 60 F.3d 230 (5th Cir. 1995), the Fifth Circuit addressed a bankruptcy trustee's motion to enforce the terms of a settlement agreement in an adversary proceeding by stating that there is:

> [n]o strong federal interest in the issue of the validity of settlements entered into to resolve a bankruptcy suit. Federal bankruptcy law fails to address the validity of settlements and this gap should be filled by state law. As we have held in federal diversity suits, a settlement is a contract and is best resolved by reference to state contracts law.

Houston, 60 F.3d at 232. Thus, the law of Mississippi controls in the instant case whether the parties made a settlement and if so, whether it should be enforced. Glazer v. J.C. Bradford & Co., 616 F.2d 167 (5th Cir. 1980).

Mississippi has long recognized that settlements are contracts, which are enforceable according to their terms. Parmley v. 84 Lumber Co., 911 So. 2d 569, 572 (Miss. Ct. App. 2005) (citing McManus v. Howard, 569 So. 2d 1213, 1215 (Miss. 1990)), cert. denied, 920 So. 2d 1008 (Miss. 2005); Middlesex Banking Co. v. Field, 37 So. 139, 149 (Miss. 1904) (Truly, J., specially concurring). It is elementary that in order for there to be a settlement the minds of the parties must meet as to the material terms of the agreement. Parmley, 911 So. 2d at 572 (quoting Hastings v. Guillot, 825 So. 2d 20 (Miss. 2002)). No "meeting of the minds" can occur until the terms of an offer

are accepted. Acceptance, however, can occur in a variety of different ways and is based upon the objective manifestations of the parties and not upon their subjective, but unmanifested intent. See, e.g., In re Estate of Davis, 832 So. 2d 534, 537 (Miss. Ct. App. 2001). Mississippi law places the burden of proving that there was a "meeting of the minds" on the party claiming the benefit of the settlement. Warwick v. Matheney, 603 So. 2d 330, 336 (Miss. 1992). For a settlement to exist it is not necessary that a release be signed. Parmley, 911 So. 2d at 572.

Applying the requisite objective standard, the question presented here is whether there was a "meeting of the minds" and the formation of an enforceable settlement agreement on September 25, 2009. The most compelling evidence that a "meeting of the minds" occurred between Vardaman and Henderson was what happened after September 25, 2009: Henderson cancelled the deposition of Douglas K. Mittleider scheduled to take place on September 28, 2009, and agreed that Vardaman could stop drafting a response to AHC's Motion for Summary Judgment, which was due on October 3, 2009. Also, near this same time period, the Debtor released $72,000 to AHC for September and October, 2008 rent and reimbursed AHC $5,200 for its tax payment.

Vardaman had every reason to believe that the questions she posed to Henderson would not be construed as a counteroffer but as requests for clarification. Indeed, the first two items in the Settlement Proposal drafted by Henderson were undefined: "five (5) business days of a final order" and "due in January 2010." Vardaman's inquiry about more specific dates cannot be construed as a rejection of the Settlement Proposal and a counteroffer by any objective standard. As for the third item, Vardaman asked for the dismissal to take place in two stages: first without prejudice for the Third-Party Defendants (who were not required to make any payments under the Settlement Proposal) and then with prejudice as to the Third-Party Defendants after the Debtor paid AHC

$200,000. Again, Vardaman at most proposed a modest modification of the Settlement Proposal, but not a counteroffer.

When Henderson agreed to take these three matters to AHC for its approval, he did not inform Vardaman that her requests placed the entire Settlement Proposal in jeopardy, and no reasonable person would have construed them as having such an effect. The parties had already agreed to the amount of money that would exchange hands and how the exchange would take place. These terms are the substantial material terms of the settlement, a fact that Henderson does not dispute. Also, he does not dispute that he and Vardaman contemplated the execution of settlement documents at a later time when insubstantial matters would be "fleshed out." However, Henderson contends that he had no authority to agree to *any* additional terms, even as to insubstantial matters.[5] Thus, according to Henderson, his client retained the right to revoke its Settlement Proposal even after the Debtor had accepted its material terms, until such time as AHC chose to sign the final settlement documents. Such an expanded view of the rights of an offeror is inconsistent with Mississippi contract law, see Edwards v. Wurster Oil Co., 688 So. 2d 772, 775 (Miss. 1997) (contract becomes binding and enforceable upon acceptance of offer), and with Mississippi law that favors the settlement of disputes, see Hastings, 825 So. 2d at 24. It is not uncommon for parties to a settlement agreement to leave out some details for later negotiation. AHC cannot use the existence of such ancillary issues, such as those that Vardaman brought to Henderson's attention, as an excuse to vitiate the agreement reached between the parties.

---

[5] There is no question that Henderson has the authority to submit the Settlement Proposal on behalf of AHC. See Olack & Johnson, supra note 3, at 434-36.

Finally, Henderson argued that his e-mails after September 25 indicated that there was no settlement agreement. Although that may have been AHC's subjective intent, it does not comport with the objective view of what occurred on September 25 - that the Debtor and the Third-Party Defendants accepted AHC's offer, and the Debtor's and Third-Party Defendants' acceptance resulted in the creation of an enforceable settlement agreement.

## Conclusion

The Court concludes that the Debtor has met its burden of proving a "meeting of the minds" by a preponderance of the evidence. Accordingly, the settlement agreement as contained in the Settlement Proposal should be enforced, but without the Vardaman suggestions outlined above. In other words, AHC should be compelled to abide by the settlement that it authorized Henderson to offer and that was accepted by the Debtor and the Third-Party Defendants. The Debtor must notice the Settlement Proposal pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and complete whatever documents are necessary to evidence the settlement agreement.

IT IS THEREFORE ORDERED that the Motion to Compel Settlement hereby is granted to the extent set forth herein.

A separate final judgment consistent with this Memorandum Opinion and Order will be entered by this Court in accordance with Federal Rule of Bankruptcy Procedure 9021.

SO ORDERED.

/s/ Neil P. Olack
Neil P. Olack
United States Bankruptcy Judge
Dated: October 27, 2009